UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JEFFREY ALLEN KIDD,    )
             )
   Plaintiff,     )    No. 5:17-CV-420-REW
             )
v.           )
             )    OPINION AND ORDER
NANCY A. BERRYHILL, Acting  )
Commissioner of Social Security, )
             )
   Defendant.    )

***   ***   ***   ***

   Jeffrey Kidd appeals the Commissioner's denial of his application for Disability

Insurance Benefits and Supplemental Security Income (collectively, "benefits"). The parties

filed dueling summary judgment motions. For the reasons that follow, the Court **GRANTS**

the Commissioner's motion (DE #18) and **DENIES** Kidd's motion (DE #15). Claimant's

mostly process-based complaints have no merit, and the Commissioner properly applied

relevant legal standards in denying Kidd benefits via a substantiated ruling.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

   Kidd is currently 57 years old. *See, e.g.*, R. at 44. He alleges disability beginning on

December 18, 2012. *See* R. at 190. Kidd applied for benefits in late 2014. R. at 184-93. The

SSA denied his claims initially on March 12, 2015, *see* R. at 117-20, and upon

reconsideration on April 24, 2015. *See* R. at 124-26. Kidd then filed a written request for a

hearing on April 29, 2015. R. at 138-39. Administrative Law Judge (ALJ) Bonnie Kittinger

held a hearing on the application on October 14, 2016. R. at 39-66. At the hearing, Kidd

testified; Gregory Schmitt represented him. R. at 42-60. Impartial vocational expert (VE)

Martha Goss[1] also testified. R. at 60-65. The ALJ subsequently denied Kidd's claims on January 10, 2017. R. at 11-23. The Appeals Council denied review and thus upheld the ALJ's decision on September 6, 2017. R. at 1-3.

The ALJ made several particular findings in the required sequence. She determined that Kidd did not engage in substantial gainful activity from December 18, 2012, through January 10, 2017, the date of decision. R. at 14. The ALJ next determined that Kidd has two severe impairments. *Id.* However, ALJ Kittinger then found that Kidd did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. at 15. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 17-20. Although ALJ Kittinger found Kidd "unable to perform any of his past relevant work," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Kidd] can perform[.]" R. at 20-22. Based on all these considerations, the ALJ ruled that Kidd was not "under a disability . . . from December 18, 2012, through the date of th[e] decision," January 10, 2017. R. at 22. Unsatisfied with the result of the SSA's administrative process, Kidd turned to federal district court for review.

## II.     ANALYSIS

### A.     *Standard of Review*

The Court has carefully read the ALJ's decision, the administrative hearing transcript, and the entire administrative record. Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the

---

[1] There is record confusion regarding the spelling of the VE's surname. The transcript identifies the VE's surname as "Doss," but the ALJ referred to the VE as "Goss" in the written decision. Further, Kidd's counsel referred to VE "Gross" in the post-hearing memorandum. R. at 317. The Court here adopts "Goss" as the spelling, mirroring the ALJ's written decision. *See also* R. at 309-10 (Resume using "Goss").

denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or

more of the claimant's impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Id.* The inquiry at this stage is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).[2]

---

[2] The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI."). Also, the Court disagrees with (although it does not here ultimately matter, given the Court's treatment of the issues) Kidd's assertion of "plenary"

B.      *The ALJ did not reversibly err in Step 5.*

Kidd's sole, overarching argument (though it has various subparts) is that the ALJ "erred in relying on vocational expert testimony to fulfill his [sic] step 5 burden[3] without adequately addressing Plaintiff's post-hearing evidence and objections challenging the vocational expert's testimony." DE #16, at 1.[4] Kidd says that, post-ALJ-hearing, he filed a memorandum, along with "several exhibits," that are purportedly "facially relevant to the issue of the ALJ's step 5 burden." *Id.* at 4. He contends that Judge Kittinger improperly "failed to acknowledge, let alone address" these materials. *Id.* Claimant labels this alleged procedural treatment "clear error, requiring remand." *Id.* The Acting Commissioner generally responds that the "ALJ reasonably relied on the vocational expert's testimony as part of her finding of non-disability" and that Kidd's specific "contentions are misplaced." DE #18, at 3-4. The Court, after reviewing the ALJ's Step 5 treatment, considers each sub-argument in turn.

Judge Kittinger's Step 5 analysis spans three pages. R. at 20-22. "To determine the extent to which" Kidd's nonexertional limitations "erode[d] the occupational base of unskilled work at all exertional levels," the ALJ asked VE Goss "whether jobs exist in the national

---

judicial review "with respect to all questions of law." DE #16, at 2-3. Neither authority he cites established such a standard. *See Whiteside*, 834 F.2d at 1292 ("[T]he scope of this court's review is *not*, as both parties have instructed the court, 'de novo.'" (emphasis in original)).

[3] The Court prefers, regarding Kidd's framing of the issue (although the disagreement here is mostly semantic), to conceptualize the Step 5 burden as the Commissioner's, not particularly the ALJ's. *See, e.g.*, *Her*, 203 F.3d at 391 ("The burden of proof shifts to the Commissioner only if the fifth step . . . is reached."). Of course, an ALJ "hearing is nonadversary, and the SSA is not represented by counsel." *Mathews v. Eldridge*, 96 S. Ct. 893, 904-05 (1976).

[4] Kidd explicitly disclaims challenging the RFC determination. DE #16, at 3. The Court confines its analysis accordingly, operating under the assumption that the assessed RFC is valid. As relevant to the ultimate issues, Judge Kittinger determined that Kidd could have "not more than occasional interaction with supervisors and coworkers[.]" R. at 17; *see also* R. at 62-63.

economy for an individual with [Kidd]'s age, education, work experience, and [RFC]." R. at 21. Goss "testified that given all of these factors [Kidd] would be able to perform the requirements of representative occupations such as" (1) sorter / packer (DOT 529.686-034), (2) cleaner (DOT 323.687-010), and (3) assembly / bench worker (DOT 737.687-074). *Id.* ALJ Kittinger "accept[ed] that testimony and f[ound] that it is consistent with the information contained in the *Dictionary of Occupational Titles.*" *Id.*

In her written decision, the ALJ explicitly recognized Kidd's comprehensive "object[ion] to the sufficiency of the vocational testimony of Martha Goss," made in differing ways "[d]uring the hearing and in a post-hearing memorandum," in which he argued "*in part* that the testimony was based on unreliable information and that Ms. Goss lacked sufficient experience and or [sic] expertise to offer the opinions she provided." R. at 21 (emphasis added) (citing Exhibit 21E, at pp. 1, 5, 6, and 8). Judge Kittinger also acknowledged Kidd's request for "a supplemental hearing to further assert the challenge to the vocational evidence." *Id.* ALJ Kittinger ultimately "overruled" Kidd's "objection" and "denied" the "request for a supplemental hearing." *Id.*

Judge Kittinger proceeded to find Goss "to be qualified, based on her training and experience," under applicable "qualifications and standards," to "testify in disability hearings." *Id.* (citing Exhibit 18E). Referencing the Code of Federal Regulations and S.S.R. 00-4p, 2000 WL 1898704 (Dec. 4, 2000), the ALJ found "that the source material referred by Ms. Goss and the evidence which she provided complies with such guidelines and is accordingly reliable." *Id.* Finally, ALJ Kittinger, noting Kidd's intra- and post-hearing objection, held that Kidd received a hearing compliant with due process requirements. *Id.* In summary, "[b]ased on the testimony of the vocational expert," and considering Kidd's "age,

education, work experience, and residual functional capacity," the ALJ found Kidd "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 22.

Against this treatment, Kidd[5] first charges that the ALJ failed "to address evidence related to the social functioning requirement in the jobs named by the" VE. DE #16, at 4-7; *see also id.* at 6 ("[T]he ALJ failed to even acknowledge this evidence."); *id.* at 7 (arguing that a supplementary report went "wholly unaddressed by the ALJ's decision"). In fact, however, the ALJ specifically cited the two pages of the post-hearing memorandum that Kidd baselessly argues she did not. *See* R. at 21 (ALJ citing Exhibit 21E, at 5, 6, which corresponds to R. at 321-22, which Kidd cites at DE #16, at 5). Later, the ALJ explicitly referenced Kidd's "[p]ost-hearing brief," which "fully set forth his objections," and indicated consideration of the entirety. *See* R. at 21 (citing "Exhibit 21E, pp. 1-46"). Judge Kittinger, thus, *did* consider this argument and evidence (including the supplementary report)—she rejected it, but she undoubtedly addressed it. Kidd understandably desires a different outcome, but his procedural argument of simple non-consideration is plainly wrong.

Kidd's real request, it seems, is for the Court "to hold that the ALJ erred when she did not consult the vocational expert [*i.e.*, Goss] with respect to" the competing Santagati report. DE #16, at 7. Paula Santagati, per Claimant, is "a Senior Vocational Rehabilitation Counsel for the Massachusetts Rehabilitation Commission." R. at 321. Santagati purports to offer her own most generalized (and quite radical)[6] "vocational opinion" that, as of October 2015, "a

---

[5] In briefing, Kidd concedes that Goss had the proper qualifications. *See* DE #16, at 13 n.10; R. at 60. The ALJ so found, premised on Goss's credentials. A VE, to participate in hearings of this type, must meet Agency qualification standards. *See* HALLEX § I-2-1-31.

[6] *See, e.g.*, *Rosado v. Berryhill*, No. 4:16-cv-173, 2018 WL 816578, at *9, 14 (E.D. Va. Jan. 22, 2018) (in a case involving the same counsel, affirming ALJ's treatment of Santagati's report, which the ALJ characterized as "not credible" due to, *inter alia*, Santagati being in the

limitation of occasional interaction with coworkers and supervisors precludes all work as the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors." R. at 360. Santagati said **utterly nothing** specific about Kidd's life, health, ability to work, or case.

Again, Claimant does not challenge the RFC determination (*i.e.*, the basis for the ALJ's hypothetical to Goss) of, as relevant here, Kidd's inability to have "more than occasional interaction with supervisors and coworkers[.]" *See* R. at 17. Kidd simply claims that the ALJ was required to examine the testifying VE about another "vocational opinion." *See* DE #16, at 4-5 (characterizing Santagati's report as providing "rebuttal vocational evidence"). Claimant cites no authority requiring such a VE inquiry, and the Court has independently found none. Goss stated *her own* impartial, professional opinion, regarding Kidd's individual case. Claimant could have extensively cross-examined her on the topics he now raises, but he did not.[7] [The Santagati report existed at the time of the hearing.] The ALJ had no duty to convene a second hearing to pepper the VE with questions that Kidd could have raised initially. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (rejecting claim that an ALJ "did not interrogate VE Breslin with sufficient rigor": "Lindsley

---

"employ of the claimant's representative" and being "employed specifically for the purpose of offering an alternative opinion"); *Lara v. Berryhill*, No. B-17-77, 2017 WL 7790109, at *9-10 (S.D. Tex. Dec. 4, 2017) ("Santagati identifies no factual basis beyond her own opinion as to why every single job in America requires more than occasional interaction with others. As previously noted, occasional means up to one-third of a workday. SSR 83-10, 1983 WL 31251, at *5. In Santagati's opinion, every single job that can possibly be imagined requires interaction with others for more than 2 hours and 40 minutes in an eight hour workday. Santagati's opinion is not sufficiently supported by any evidence. Furthermore, it does not specifically discuss the interactions that can be expected of a car rental delivery driver or road roller operator, the jobs actually identified by Johnson and cited by the ALJ.").

[7] Goss, who related her extensive prior experience in market studies and job site visits ("several hundred," R. at 64) specifically rejected the argument that the jobs she identified as representative might have social interaction expectations above the ALJ's hypothetical: "Not in my opinion." R. at 65. The ALJ had this testimony and the proffered views of Santagati, and the ALJ found Goss's opinions reliable and properly substantiated. R. at 21.

was afforded a full opportunity to cross-examine Breslin. The ALJ had no duty under S.S.R. 00-4p to interrogate him further."); *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary."); *Foster v. Halter*, 279 F.3d 348, 255-56 (6th Cir. 2001) (recognizing ALJ's "discretion to determine whether further evidence, such as additional . . . expert testimony, is necessary"); *Stauffer v. Califano*, 692 F.2d 306, 308 (3d Cir. 1982) ("[I]t was not a due process violation to deny a second hearing.").

More fundamentally, the ALJ's role simply is not to cross-examine a VE about possibly conflicting testimony from another purported VE. Instead, when "the Secretary seeks to rely on VE testimony to carry h[er] burden of proving the existence of a substantial number of jobs that plaintiff can perform, other than her past work, the testimony **must be given in response to a hypothetical question** that accurately describes the plaintiff in all significant, relevant respects[.]" *Felisky v. Brown*, 35 F.3d 1027, 1035-36 (6th Cir. 1994) (emphasis added). This mandatory questioning method—which occurred here via Judge Kittinger's hypo to Goss and Goss's impartial, expert response—does not fairly contemplate an ALJ taking efforts to get one VE to opine on another VE's independent take. *See, e.g.*, *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.").

Further, contrary to some of Kidd's arguments, it clearly *is* for the ALJ to assess dueling vocational opinions. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 158 (6th Cir. 2009) ("[W]hile the ALJ is certainly authorized to take administrative notice of job data from various sources, including the testimony of Poe's own vocational expert, he was not required

to accept Breslin's [Poe's VE] opinion over that of the vocational expert who based his opinion on the contents of the DOT."); *Martin*, 170 F. App'x at 374; *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 791 (6th Cir. 2017) (affirming when the ALJ "accepted the vocational expert's testimony over [Biestek's] objections"); *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (countenancing the ALJ's "job to evaluate the trustworthiness of a vocational expert's testimony"); *Harrington v. Comm'r of Soc. Sec.*, No. 1:14 CV 1833, 2015 WL 5308245, at *6-7 (N.D. Ohio Sept. 10, 2015) (contemplating that ALJs can (but are not required to) "resolve conflicts between vocational evidence provided by . . . other VEs"); *Clements v. Colvin*, No. 2:12CV144-SAA, 2013 WL 5231491, at *3-5 (N.D. Miss. Sept. 16, 2013) (remanding explicitly for the ALJ to resolve conflicts between two VEs' testimony). Judge Kittinger, considering the full record, fairly assessed the conflicting opinions here and reasonably (if inferentially) sided with the "qualified" VE Goss (the only vocational expert to state an opinion specifically tied to Kidd's particular circumstances, and who, per the ALJ, based her answers on "reliable evidence") over Santagati's categorical, extreme views, based on nothing more than her own "experience placing individuals with disabilities into competitive employment." *See* R. at 21, 360. Kidd's procedural contentions on these topics have no merit.

*Second*—Kidd argues that the ALJ "must rule on post-hearing objections to the [VE]'s testimony." DE #16, at 8-9. He particularly cites a provision of the HALLEX, § I-2-6-74, that he says obligates an ALJ to "rule on any objection" and "address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, **or** in the body of his or her decision." *Id.* at 8 (emphasis added). The Court, for purposes of processing this argument, and without opposition from the Commissioner, takes this as a given.

This argument fails for a simple reason: Claimant misrepresents the record in stating that "it is indisputable that the ALJ failed to acknowledge or discuss Plaintiff's rebuttal evidence submitted and did not address all of the objections presented in the memorandum." DE #16, at 8. That is wrong. Judge Kittinger explicitly acknowledged and cited to the entire post-hearing memorandum. *See* R. at 21. She described the arguments (including that Goss's "testimony was based on unreliable information") and ultimately overruled all objections. *Id.*; *see also Biestek*, 880 F.3d at 791. There is no merit to Kidd's simple allegation of ALJ non-consideration. *See* DE #16, at 9 ("[H]er error is her failure to address facially relevant objections / concerns / evidence[.]"). Kidd's error is failure to read the ALJ's decision. The ALJ need not exhaustively catalog each argument to enter a proper ruling.[8]

*Third*—and this is the argument with the most traction—Claimant labels as error the "ALJ's failure to address [his] objection based on up-to-date and reliable job information as to how the jobs named by the [VE] are currently performed." DE #16, at 9-13. Kidd contends that Goss's testimony was "facially inconsistent with the Agency regulations requiring it to be based upon reliable information." *Id.* at 9.

As above, Kidd ultimately disclaims "an attempt to 'play vocational expert'" or to ask the Court to do so. *Id.* at 12. Instead, Claimant clarifies that his argument really is, again, that the ALJ procedurally erred simply by not "presenting" Santagati's conclusions "to the vocational expert" who testified, Goss. *Id.* The Court rejects that process-based contention for all the reasons stated previously on this topic. Further, Judge Kittinger plainly *did* address the

---

[8] *Cf., e.g.*, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (countenancing idea of tacit consideration—that an ALJ can have considered the full record without memorializing every discrete component of the decisional process in her opinion); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (same); *Loral Defense Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) (evaluating ALJ's factual findings "as a whole" and approving an ALJ "implicitly resolv[ing]" issues).

reliability objection. R. at 21 (rejecting argument that Goss's "testimony was based on unreliable information"). Alternatively, however, and for thoroughness, the Court analyzes what appear to be the underlying, substantive claims.

The argument centers on Kidd's contention that the *Dictionary of Occupational Titles* (DOT) "is an obsolete and static database that is no longer being developed or enhanced by the United States Department of Labor[.]" DE #16, at 9. Judge Kittinger explicitly stated her reliance on the DOT, which, in her assessment, certain C.F.R. and S.S.R. provisions enabled her to consider. R. at 21 (citing authority). Kidd would prefer, instead, that an ALJ rely on allegedly more "up-to-date and reliable job descriptions at" a website called O*NET. DE #16, at 9. Specifically, Kidd contends that the representative jobs Goss identified—sorter / packer, cleaner, and assembly / bench worker—"are performed differently in today's workforce than described in the DOT when those descriptions were last updated 30 to 40 years ago." *Id.* at 11. The argument centers on the "social functioning requirements" for such jobs. Santagati, as discussed, expressed the quite extreme view that a limitation of "occasional interaction with coworkers and supervisors **precludes all work**" because "the training and probationary period for **any job** would require more than occasional interaction with coworkers and supervisors." R. at 360 (emphases added); *see also* DE #16, at 6 (Kidd arguing that the "occasional interaction" limitation precludes him from completing *any* job training period). Basically, the argument focuses on the DOT's alleged antiquity regarding lack of consideration of training or probationary periods for jobs available in the modern economy.

At the outset (although this is not ultimately dispositive), the Court rejects the claim based on Kidd's "failure to raise this issue during the hearing[.]" *Harris v. Comm'r of Soc. Sec.*, No. 1:11-CV-1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012). "The Sixth

Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Id.* (citing, *inter alia*, *Hammond v. Chater*, 116 F.3d 1480, No. 96-3755, 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (table)); *see also, e.g.*, *Lyon v. Comm'r of Soc. Sec.*, No. 1:11-cv-1104, 2013 WL 1149967, at *4 (W.D. Mich. Mar. 19, 2013) (collecting cases for this proposition). A claimant simply "may not now complain" in federal court when he "failed to cross examine" a VE on a topic "when he had an opportunity to do so." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *see also Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (holding Liskowitz "forfeited this argument [regarding a source of VE information] by failing to object to the VE's testimony during the hearing"); *Montano v. Comm'r of Soc. Sec.*, No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014) (negatively noting that "plaintiff's counsel was given the opportunity to cross-examine the VE and did not challenge this [DOT-based] testimony"); *Snow v. Comm'r of Soc. Sec.*, No. 5:14CV1861, 2015 WL 4507271, at *20 (N.D. Ohio July 24, 2015) (criticizing: "Moreover, at the hearing, Snow's counsel did not object to the VE's qualifications when asked and did not object to the VE's numbers or stated reference materials.").

Here, Kidd objected only (and generically) to Goss's "ability to testify[] to numbers based on the sources that she's given." R. at 60. Kidd did not, at the hearing, object on the basis of alleged DOT obsolescence. Claimant's argument on this front, before this court, is sweeping and categorical in nature—that mere occasional limits on social interaction preclude all work due to the modern workforce's reliance on training and probationary periods. Claimant certainly could have raised such an objection, which avoids job particularity (and,

therefore, the need for formulation after the VE's intra-hearing job identification), to VE Goss at the ALJ hearing, but chose not to. The Santagati report and the DOT each existed at the time of the hearing, and Kidd could have presented the theories. Kidd's arguments to the contrary, centering on his representative's heavy workload and busy schedule, as well as the purported realities of a hearing-based practice, DE #16, at 13-14 n.10, are contrary to Sixth Circuit (and other) case law and are otherwise unconvincing. [Further, Mr. Osterhout did not represent Kidd at the ALJ hearing; Mr. Schmitt did. Osterhout's footnoted complaints thus ring hollow, to the Court.]

Alternatively, moving to the merits, the Sixth Circuit acknowledges that the SSA "does take administrative notice of [the DOT] when determining if jobs exist in the national economy." *Cunningham v. Astrue*, 360 F. App'x 606, 615-16 (6th Cir. 2010) (citing 20 C.F.R. § 404.1566(d)(1)). The Circuit plainly holds: "To establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) (explicitly calling the DOT, and other "various governmental publications," sources of "reliable job information"). Indeed, that is just what ALJ Kittinger did here.

However, the Court of Appeals in *Cunningham* (a nonbinding, split decision) cautioned that "common sense dictates that when [DOT] descriptions appear obsolete, a more recent source of information should be consulted." *Id.* at 615. The Court, per *Cunningham*, must be able to review whether the at-issue "job descriptions were up-to-date and, thus, whether the VE's testimony was reliable." *Id.*; *see also id.* at 616 (concluding that "the VE's dependence on the DOT listings alone does not warrant a presumption of reliability" when

"the two descriptions relied on by the VE [we]re not found in O*NET"). Neither party cites or discusses *Cunningham*, a case obviously pertinent to the issues.

The Court makes a few observations about *Cunningham*. First, *Cunningham* "did not hold," categorically, "that the DOT is an unreliable or out-of-date source." *Earls v. Comm'r of Soc. Sec.*, No. 09 CV 1465, 2011 WL 3652435, at *7 (S.D. Ohio Aug. 19, 2011). "Rather, the court [of appeals] acknowledged that pursuant to the regulations the DOT is a publication of which the ALJ may take notice." *Id.* Indeed, post-*Cunningham*, the Sixth Circuit directly held (as stated and described above), in a published decision: "**To establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT.**" *Kyle*, 609 F.3d at 855 (labeling the DOT an enduring source of "reliable job information") (emphasis added); *see also, e.g.*, *Roberts v. Colvin*, 946 F. Supp. 2d 646, 662 n.6 (S.D. Tex. 2013) (same, rejecting argument that the DOT is "'obsolete' and not reliable"); *Biestek*, 880 F.3d at 787 (relying on the DOT as an information source); *id.* at 789-90 (affirming when the VE "based her testimony on the" DOT). This is consistent with the Circuit's pre-*Cunningham* case law. *See, e.g.*, *Lindsley*, 560 F.3d at 603. Accordingly, to the extent *Cunningham* could be read to imply blanket disapproval of the DOT, *Lindsley*'s unanimous, prior, published guidance, as well as *Kyle*'s unanimous, subsequent, published direction, clearly trump.

Second, despite "the Department of Labor's adoption of O*NET, the Social Security Administration still relies on the DOT and only requires the vocational expert's testimony to be consistent with the DOT. *See* SSR 00-4p ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."); ("Occupational evidence provided by a

VE or VS generally should be consistent with the occupational information supplied by the DOT.").” *Daniel v. Colvin*, No. 1:14-CV-775, 2015 WL 5530210, at *5 n.4 (S.D. Ohio Sept. 21, 2015); *see also, e.g.*, *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018) (Souter, J.) (noting that, despite some criticisms of DOT obsolescence, the SSA “continues to treat the DOT as” reliable). ALJ Kittinger made the same point in her written decision. R. at 21. *Cunningham*, further, did not “decide or even consider whether the vocational expert was precluded from using the DOT to determine the skill level required to perform a certain occupation.” *Daniel*, 2015 WL 5530210, at *5 n.4. Instead, *Cunningham* only addressed using VE testimony (and, thus, DOT v. O*NET information) “to determine **the number of jobs** available in the economy that the claimant could perform with her RFC.” *Id.* (emphasis added); *Cunningham*, 360 F. App’x at 615 (confining the relevant analysis to “whether substantial evidence supports the conclusion that the[ at-issue] jobs exist in substantial numbers”); *see also Holleran v. Colvin*, No. 13-193-GFVT, 2015 WL 1432966, at *8-9 (E.D. Ky. Mar. 27, 2015) (similarly distinguishing). Plainly, focused on the social function components of the representative jobs, Kidd raises no issue in this court concerning the discrete job numerosity inquiry.

Third, many courts have criticized *Cunningham*’s singular status. *See, e.g.*, *Morris v. Comm’r of Soc. Sec.*, No. 1:16-cv-433, 2017 WL 1159809, at *11 (W.D. Mich. Mar. 29, 2017) (dissing *Cunningham* as a lone outlier—“No subsequent Sixth Circuit decision has . . . questioned the ‘reliability’ of VE testimony in a similar fashion.”); *Belew v. Astrue*, No. 2:11-107-DCR, 2012 WL 3027114, at *9 n.5 (E.D. Ky. July 24, 2012) (same: “*Cunningham* is an unpublished decision by a divided panel. No subsequent Sixth Circuit opinion has questioned the reliability of VE testimony on the grounds of his or her reliance on the DOT.” (citing

cases)); *Cunningham*, 360 F. App'x at 616-17 (Ryan, J., dissenting) (panning the panel majority for "locat[ing] evidence it thinks ought to have been taken into account by a better informed, more thoroughly prepared expert witness, and [for] hold[ing] that the expert's failure to consider this court's more favored data effectively nullified the 'reliability' of the expert's opinion, rendering the entire body of otherwise 'substantial evidence' suddenly insubstantial"); *see also Gallo v. Comm'r of Soc. Sec.*, 449 F. App'x 648, 650 (9th Cir. 2011) (holding that reliance on VE's DOT-based testimony, though it contained "a seemingly antiquated reference to typewriters," was proper: "VE testimony may become unreliable on account of a conflict with the DOT . . . but not on account of its compliance with the DOT."); *Carrier v. Astrue*, No. 10-67-GWU, 2011 WL 2694659, at *5 (E.D. Ky. July 12, 2011) (rejecting an argument "that the DOT is an obsolete resource"); *Ragland v. Berryhill*, No. 17-C-730, 2018 WL 1757656, at *11 & *11 nn.8-9 (E.D. Wis. Apr. 12, 2018) (recently rejecting a claimant's O*NET-based argument, involving the same counsel as this case); *Moffit v. Berryhill*, No. 17-4015-JWL, 2018 WL 276770, at *6 (D. Kan. Jan. 3, 2018) (same); *James v. Colvin*, No. 16-470-EWD, 2017 WL 4185479, at *11-12 (M.D. La. Sept. 21, 2017) (same).

The Court adds the observation, while continuing to echo the many already-levied criticisms, that *Cunningham* cited **no legal authority** for its broad musings, instead principally relying on the panel majority's "common sense" to reach its conclusions. *See* 360 F. App'x at 615. This approach, divorced from prior and subsequent Sixth Circuit case law, departs from typically deferential, substantial-evidence review and empties the force from much of *Cunningham*'s generalized commentary.[9] *See also, e.g., Moffit*, 2018 WL 276770, at

---

[9] Some courts have defended *Cunningham* against such criticism. *See, e.g., Moore v. Berryhill*, No. 4:17-CV-91-HBB, 2018 WL 2197974, at *3-4 (W.D. Ky. May 14, 2018) (rebuffing the notion that "*Cunningham* [i]s an unpublished one-off" because "Judge Posner" endorsed similar reasoning "in a published opinion"); *Webb v. Comm'r of Soc. Sec.*, No. 16-

*6 (noting the "first finding" of the SSA-commissioned Occupational Information Development Advisory Panel that "the O*NET in its current form is not suitable for disability adjudication"); *see also* Occupational Info. Dev. Advisory Panel, Findings Report (June 28, 2010), https://www.ssa.gov/oidap/Documents/COMPLETE%20FINAL--Findings%20Report%20OIDAP%20062810.pdf, at 3, 10-11.

The Acting Commissioner herself tells the Court that the SSA "has not recognized the O*NET as an authoritative source on par with the DOT." DE #18, at 5 n.3; *see also Holleran*, 2015 WL 1432966, at *9 ("The regulations make no mention of O*Net."); *Moore*, 2018 WL 2197974, at *3 (recognizing that "the agency may have deemed O*NET unsuitable for disability adjudications"); *cf.* R. at 319 (Kidd arguing that a resource being "ready enough" for assessment "and equating to substantial evidence are not compatible"). Claimant's varied arguments, thus, effectively collapse on themselves; O*NET (unlike the DOT) is "not administratively noticed by the SSA," R. at 319, and the agency's own studying panel found O*NET "not suitable for disability adjudication." *See also Dimmett v. Colvin*, 816 F.3d 486, 489 (7th Cir. 2016) (noting that "the Social Security Administration . . . hasn't endorsed the O*NET").

This, of course, is not to say that applicable law necessarily "preclude[s] reliance on the O*NET" in appropriate circumstances, *Johnson v. Berryhill*, No. 4:16-CV-106-HBB, 2017 WL 2454326, at *7-9 (W.D. Ky. June 6, 2017), but rather that the SSA still considers the DOT reliable, that there is (at least) debate concerning O*NET utility, and that an ALJ has considerable discretion when assessing VE testimony (and its underlying evidentiary bases)

11786, 2017 WL 2312827, at *10 (E.D. Mich. Apr. 25, 2017) (disparaging some courts as "simply ignor[ing] the persuasive value of *Cunningham*'s observation that the DOT's job descriptions plainly seem tired at times—a well-reasoned insight"). The Court does not doubt that the DOT is fallible, but has here catalogued why it believes *Cunningham* lacks significant persuasive force (factors with which *Webb*, for example, did not meaningfully grapple).

for reliability and currency. *See, e.g.*, *Lee v. Barnhart*, 93 F. App'x 291, 292-93 (9th Cir. 2003) ("SSR 00-4p does not preclude reliance on the O*NET.") (affirming treatment when VE relied on O*NET instead of DOT); *Moss v. Astrue*, No. 09-1196, 2010 WL 2572040, at *7 (C.D. Ill. June 22, 2010) ("[T]he VE is not required to limit his hypothetical to DOT data; the VE can also use outside data, including ONET."); *Wennersten v. Colvin*, No. 12-cv-783-bbc, 2013 WL 4821474, at *4-5 (W.D. Wis. Sept. 10, 2013) (acknowledging that O*NET consideration can be appropriate); *Duong v. Comm'r of Soc. Sec.*, No. 1:15-CV-1206, 2016 WL 5423483, at 4 (W.D. Mich. Sept. 29, 2016) ("The ALJ was not required to accept the occupational information contained in the 'O*NET Online' or any particular source."); *Whitmire v. Comm'r of Soc. Sec.*, No. 3:13-CV-1380, 2014 WL 582781, at *10 (M.D. Pa. Feb. 14, 2014) (finding "Plaintiff's invitation to abandon the VE's testimony regarding the DOT job descriptions in favor of those found in O*Net unappealing, in large part, due to a lack of clarity as to whether the Commissioner considers O*Net a reliable resource"); *Rollston v. Comm'r of Soc. Sec.*, No. 1:16-CV-168, 2016 WL 6436676, at *5 (W.D. Mich. Nov. 1, 2016) ("The ALJ was not required to accept the occupational information contained in the 'O*NET Online' or any particular source. . . . [T]he failure to consult the O*NET does not constitute error.").

This analysis, really, is a function of the Court's limited reviewing role. If an ALJ, in a hypothetical case, found it appropriate to rely on O*NET in the Step 5 determination and adequately supported such reliance, a district court's deferential, substantial-evidence analysis likely would be analogous to the Court's treatment here. *Baranich v. Barnhart*, 128 F. App'x 481, 486 n.3 (6th Cir. 2005) ("[T]he VE is permitted to rely on sources other than the DOT in evaluating a hypothetical."; "[T]he DOT is only one source to be used in assessing the

availability of jobs for the claimant."). The Court's role, though, is not to step into the ALJ's shoes and inflexibly compel O*NET consideration, in these circumstances. *See, e.g.*, *Snow*, 2015 WL 4507271, at *20 ("[T]here is no requirement that the VE's testimony be consistent with O*NET."); *Ragland*, 2018 WL 1757656, at *11 & *11 nn.8-9.

Given (1) the Sixth Circuit's pre-*Cunningham* approach to substantial evidence review and DOT reliance, (2) *Kyle*'s post-*Cunningham* treatment of DOT-based VE testimony (and complete lack of acknowledgment of *Cunningham*'s analysis), (3) *Cunningham*'s own significant, internal limitations, (4) the various criticisms *Cunningham* has garnered since issuance; and (5) the relevant C.F.R. / S.S.R. treatment (as cited and explained in the case law and by Judge Kittinger), the Court doubts *Cunningham*'s precedential or persuasive import. Per *Kyle*, the Circuit's most recent and published guidance on this question, to "establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT," a source of "reliable job information." 609 F.3d at 855; *see also Biestek*, 880 F.3d at 787-90; *Lindsley*, 560 F.3d at 603 (pre-*Cunningham*, calling the DOT a source of "reliable job information" that "ALJs are permitted to consider"). That hews to the regulations and ends the matter, to the Court.[10]

However, even applying *Cunningham* on its own, expansive terms (which, again, only purportedly applied to probing job abundance), Goss's "testimony is not undermined by the fact that she did not rely on the job descriptions in O*NET." *Belew*, 2012 WL 3027114, at *10. VE Goss's opinions were not solely DOT-dependent (and the DOT, as explained, is the focus of Kidd's ire). She certainly based her opinions partly on the DOT, R. at 62-63, but also

---

[10] Further, Goss explicitly agreed that, if she gave "an opinion that conflicts with the information in the [DOT]," she would "advise . . . of that conflict, and the basis for [her] opinion." R. at 61. The Sixth Circuit upholds DOT-based VE opinions when the ALJ asks of potential conflicts with the DOT, as Judge Kittinger did here. *Lindsley*, 560 F.3d at 606.

partly on information from "U.S. Publishing" and "Skill-Tran," R. at 64, as well as "on [her] work experience." R. at 65. *See, e.g.*, *Pitts v. Astrue*, No. 1:10-CV-870, 2011 WL 2553340, at *6 n.5 (N.D. Ohio May 19, 2011) ("*Cunningham* is not controlling in this case because although Mr. Yi stated that his testimony was consistent with the DOT, he acknowledged that his job incidence numbers were based on several sources, including the Bureau of Labor Statistics and occupational market information[.]"); *McFarland v. Comm'r of Soc. Sec.*, No. 1:16 CV 308, 2017 WL 1165945, at *6 (N.D. Ohio Mar. 29, 2017) (concluding "the VE appropriately used her knowledge and experience to supplement job descriptions in the DOT"); *Dantzer v. Comm'r of Soc. Sec.*, No. 3:09 CV 2198, 2011 WL 1113446, at *4 (N.D. Ohio Mar. 24, 2011) ("The VE was permitted to rely upon her own experience, even if it in some way conflicted with the DOT." (citing S.S.R. 00-4p, 2000 WL 1898704, at *2)); *Hetzer v. Comm'r of Soc. Sec.*, No. 1:16cv555, 2017 WL 4324754, at *3 (S.D. Ohio Sept. 29, 2017) (collecting cases for the proposition that "an ALJ could rely on a VE's testimony which was based on SkillTRAN's Job Browser Pro software"); *Malone v. Astrue*, No. 3:10-cv-1137, 2011 WL 5879436, at *5 (M.D. Tenn. Nov. 23, 2011) ("see[ing] no reason to discredit" a VE's testimony that relied on SkillTRAN and characterizing SkillTRAN, as relevant to some of Kidd's remarks, as "a relatively new program"); *Purdy*, 887 F.3d at 14-15 (affirming when VE relied on SkillTRAN); *Grunwald v. Colvin*, No. 2:16-cv-12599, 2017 WL 3033418, at *4 (E.D. Mich. July 18, 2017) (approving VE's reliance on, *inter alia*, statistics from U.S. Publishing).

Further, the Court has reviewed the three representative jobs Goss particularly identified—DOT 529.686-034, 323.687.010, and 737.687-074—and sees nothing obviously antiquated in their descriptions. A "sorter / packer" (in the ALJ's phrasing) or "factory helper"

(in the DOT's) still must "[f]eed[] . . . machines . . . working individually or as [an] interchangeable member of [a] crew[.]" *See* Factory Helper, *available at* https://occupationalinfo.org/52/529686034.html (last visited Mar. 21, 2018).[11] A corresponding O*NET description mirrors this trade. *See* Helpers, *available at* https://www.onetonline.org/link/summary/51-9198.00 (last visited Mar. 21, 2018) (*e.g.*, "Load and unload items from machines"; "Face-to-Face Discussions").

A "cleaner" must still "[c]lean[] . . . rooms . . . offices, halls, and other areas," as well as perform other like responsibilities. *See* Cleaner, *available at* https://occupational info.org/32/323687010.html (last visited Mar. 21, 2018).[12] Again, an O*NET description corresponds. *See* Maids and Housekeeping Cleaners, *available at* https://www.onetonline.org/link/summary/37-2012.00 (last visited Mar. 21, 2018) ("Perform any combination of light cleaning duties to maintain private households or commercial establishments, such as hotels and hospitals, in a clean and orderly manner. Duties may include making beds, replenishing linens, cleaning rooms and halls, and vacuuming.").

Likewise, an "assembly / bench work[er]" (in the ALJ's phrasing) or "laborer" (in the DOT's) must still "[a]ssemble[] and pack[]" items and perform a variety of associated "tasks." *See* Laborer, *available at* https://occupationalinfo.org/73/737687074.html (last visited Mar. 21, 2018).[13] An O*NET listing parallels. *See* Packers and Packagers, Hand, *available at*

---

[11] *See also generally Landeros v. Astrue*, No. CV 11-7156-JPR, 2012 WL 2700384, at *4-6 (C.D. Cal. July 6, 2012) (affirming benefits denial with this job identified in Step 5); *McGlothlen v. Astrue*, No. 7:11-CV-148-RJ, 2012 WL 3647411 (E.D.N.C. Aug. 23, 2012) (same); *Arreola v. Berryhill*, No. 16-7224 SS, 2017 WL 2604246 (C.D. Cal. June 14, 2017) (same).

[12] *See also generally Cooley v. Comm'r of Soc. Sec.*, No. C-1-08-499, 2009 WL 2982881 (S.D. Ohio Sept. 15, 2009) (affirming benefits denial with this job identified in Step 5).

[13] Kidd cites the correct DOT entry early on page 11 of DE #16, but miscites it later on the same page. *See id.* (referencing "DOT 737.687-014" (instead of 074)). His reference to a "bag loader" occupation thus is error.

https://www.onetonline.org/link/summary/53-7064.00 (last visited Mar. 21, 2018) ("Pack or package by hand a wide variety of products and materials."; perform many other tasks, *e.g.*, "Clean containers, materials, supplies, or work areas, using cleaning solutions and hand tools."). Add to the lack of O*NET—DOT disparity here the absence of "an immediate, common sense reaction that the jobs are likely obsolete." *Hamilton v. Berryhill*, No. 4:17-CV-53-HBB, 2018 WL 1324163, at *5 (W.D. Ky. Mar. 14, 2018).[14] For these reasons, the Court can, in its assessment, tell that the at-issue "job descriptions [a]re up-to-date" and, thus, that VE Goss's DOT-based testimony validly undergirded ALJ Kittinger's disability determination. *See Cunningham*, 360 F. App'x at 615; *see also, e.g.*, *Whitmire*, 2014 WL 582781, at *9 ("The instant case is clearly distinguishable from *Cunningham* since all three job descriptions identified by the VE are present in both the DOT, and O*Net."). Further, and notably, the Court sees no reference in any pertinent O*NET description to an amount of training or probation a new employee in any such job would face, as relevant to assessment of Santagati's report.[15]

---

[14] *See also, e.g.*, *Holleran*, 2015 WL 1432966, at *8 ("Holleran does not suggest that the language in the DOT descriptions is outdated or antiquated, but only that the descriptions on O*Net are different than the descriptions in the DOT. This distinction is different than the one made in *Cunningham*."). The jobs at issue here are manifestly not the type that "no longer exist in the American economy," such as "pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist." *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014); *see also, e.g.*, *Czosnowski v. Comm'r of Soc. Sec.*, No. RDB-13-1467, 2014 WL 1660083, at *4 (D. Md. Apr. 23, 2014) (concluding that the jobs of "cutter-and-paster of press clippings using knives and scissors" and "document preparer for microfilming" were obsolete); *Applefeld v. Comm'r of Soc. Sec.*, No. SAG-17-517, 2018 WL 1136571, at *5 n.1 (D. Md. Mar. 1, 2018) (concluding that the jobs of "photocopy operator" and "retail price marker" were obsolete); *Coulter v. Colvin*, No. 1:13-CV-11-LLK, 2013 WL 3992445, at *2 (W.D. Ky. Aug. 2, 2013) (concluding that a "fishing reel assembler" job was obsolete). Americans still work in factories, clean buildings, and assemble and pack items.

[15] Given the sheer volume of SSA claims and appeals, clarity, consistency, and predictability are values of particular import in the law surrounding SSA disability determinations. The issues *Cunningham* injected, with which district courts have now struggled for eight years, could use exegesis in published guidance by the Circuit. *See, e.g.*, *Petty v. Astrue*, No. 2:12-

At bottom, the relevant, core inquiry is whether substantial evidence supports the ALJ's Step 5 decision. For all the reasons explained, in this scenario, it undoubtedly does. Even considering Santagati's submitted report, as Judge Kittinger did, the record, at most, reflects competing vocational testimony. The ALJ, in such a scenario, is allowed to make a supported finding between the two, and VE testimony responsive to a valid hypothetical (which, again, Kidd does not dispute) is substantial evidence to support the Step 5 determination. *Biestek*, 880 F.3d at 790-91; *Lindsley*, 560 F.3d at 607; *Poe*, 342 F. App'x at 158; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The Court upholds that administrative decision even if there is substantial evidence (*i.e.*, another vocational opinion) to support a contrary conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).

ALJ Kittinger considered all offered proof and rationally determined to credit VE Goss's impartial, expert opinion (specific to Kidd's circumstances and largely reliant on the DOT) over Santagati's generalized, non-specific report, expressing the extreme, outlier view (with no record or evidentiary support) that an "occasional interaction" limitation alone "precludes all work." There was no error in the VE's (and, thus, the ALJ's) reliance on the DOT, and Judge Kittinger found that VE Goss was qualified and based her expert opinion on reliable evidence. The Court does not, on substantial evidence review, reverse the ALJ in such circumstances. Therefore, per the above analysis, none of Kidd's arguments has traction, and the Court sees no reversible error in the ALJ's Step 5 treatment.

---

cv-324, 2013 WL 3466851, at *11 (E.D. Tenn. July 10, 2013) (narrating a portion of but three years' of district court confusion); *Ragland*, 2018 WL 1757656, at *11 n.9 (noting the practical concern that holding "that use of the DOT constitutes per se error would call into question all of the SSA adjudications in which the DOT plays a role" and stating that such a holding "would overstep the bounds of judicial review").

### III.    CONCLUSION

For the reasons stated, the Court **GRANTS** DE #18 and **DENIES** DE #15. The Court will enter a separate Judgment.

This the 19th day of June, 2018.

Signed By:

*Robert E. Wier*

United States District Judge